| | | |
|---|---|---|
| K.K. and K.K., as parents, guardians, and Next friends to A.K., a minor, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:20-CV-96-DCP |
| CHUCK COMER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment. [Doc. 30].

Now before the Court is Defendant Knox County Board of Education's Motion to Dismiss for Failure to State a Claim [Doc. 46] and Defendant Chuck Comer's Motion to Dismiss for Qualified Immunity. [Doc. 47]. Plaintiff filed an omnibus response in opposition to both motions [Doc. 50] as well as a supplement to the response. [Doc. 52]. Defendants subsequently replied to Plaintiff's omnibus motion. [Doc. 54]. Accordingly, for the reasons more fully explained below, the Court finds Defendants' Motions [**Docs. 46, 47**] well taken, and they will be **GRANTED**.

I. **BACKGROUND**

The Complaint [Doc. 1] in this matter was filed on March 4, 2020, and it was later amended [Doc. 43] on December 23, 2020. Specifically, the First Amended Complaint ("Amended Complaint") seeks relief for various violations of the First Amendment pursuant to 42 U.S.C. § 1983 against Defendant Chuck Comer ("Comer"), individually, and against Defendant Knox County Board of Education ("KCBOE"). Plaintiff asserts that Defendant Comer has violated the

Establishment Clause of the First Amendment through his actions. Additionally, Plaintiff asserts that Defendant KCBOE has maintained a policy, practice, and custom of permitting its employee, Defendant Comer, to unconstitutionally proselytize to students as a condition precedent to allowing such students to participate in a school-sponsored basketball program [*id.* at ¶ 29] and has failed to train its employees regarding the mandates of the First Amendment. [*Id.* at ¶ 36]. Plaintiff alleges that Defendant KCBOE's failure to train shows that it was deliberately indifferent to Plaintiff's rights, "thereby showing the necessary policy or custom to establish § 1983 liability." [*Id.* at ¶ 37].

K.K. and K.K. are the mothers of Plaintiff A.K., a minor who was a student at West Valley Middle School that is operated by Defendant KCBOE. [Doc. 43 at ¶¶ 7, 8]. The Amended Complaint alleges that Defendant Comer was employed by Defendant KCBOE as a physical education and wellness teacher at West Valley Middle School at all times relevant to the Amended Complaint. [*Id.* at ¶ 9]. The Amended Complaint states that Defendant Comer, with the knowledge and acquiescence of Defendant KCBOE, maintained a "school-sponsored basketball program" at West Valley Middle School. [*Id.* at ¶ 10]. The Amended Complaint specifies that David Claxton ["Principal Claxton"], the principal of West Valley Middle School, had been aware of the school-sponsored basketball program for the entirety of his eight (8) years working at West Valley Middle School. [*Id.* at ¶ 11].

The Amended Complaint alleges that a condition precedent existed requiring that students wishing to participate in the school-sponsored basketball program must also participate in West Valley Middle School's Teens for Christ Club. [*Id.* at ¶ 12]. The Amended Complaint purports to assert that Defendant Comer "lured" middle-school students into the Teens for Christ Club by informing students that they were simply participating in a school-sponsored basketball program.

[*Id.* at ¶ 13]. The Amended Complaint alleges Defendant Comer would then reveal that in order to participate in the school-sponsored basketball program, they would be forced to also participate in the Teens for Christ Club. [*Id.* at ¶ 14]. The Amended Complaint specifies that "for each instance of participation by students in Defendants' school-sponsored basketball program . . . the students were required to be present early in the morning before school at a lecture hall to listen to Comer read from and interpret the Bible for approximately 30 minutes." [*Id.* at ¶ 15]. The Amended Complaint states that if students declined to participate in the Teens for Christ Club, they were subsequently barred from participating in the school-sponsored basketball program. [*Id.* at ¶ 16].

The Amended Complaint alleges that during the 2019–2020 academic year, A.K. learned about the school-sponsored basketball program but was initially unaware that participation in the Teens for Christ Club was a condition precedent, and A.K. became aware of the condition only after attempting to participate in the basketball program. [*Id.* at ¶¶ 17, 18]. The Amended Complaint states that K.K. and K.K. are the "married, interracial, lesbian parents of A.K," [*id.* at ¶ 8], and alleges that during Defendant Comer's preaching sessions, he would single out LGBTQ issues and their relation to sin. [*Id.* at ¶ 19]. The Amended Complaint provides that during one of the preaching sessions, Defendant Comer distributed a copy of Romans 1:26-27—a passage from the Bible allegedly condemning homosexuality—to A.K. [*Id.* at ¶ 20]. The Amended Complaint states that A.K. then reported to K.K. and K.K. that Defendants were coercing A.K. to endure Defendant Comer's religious teaching, including the aforementioned harassment based on A.K.'s parents' sexual orientation, as a condition precedent to A.K.'s participation in the school-sponsored basketball program. [*Id.* at ¶ 21]. K.K. and K.K. were "offended by such outrageous and clearly unconstitutional actions by Defendants." [*Id.*].

The Amended Complaint asserts that—based on information provided to K.K. and K.K. by Assistant Principal Matt Patillo—Principal Claxton and Defendant KCBOE have been aware of and have acquiesced to Defendant Comer leading the school-sponsored basketball program at West Valley Middle School for no less than eight (8) years while using it as a pretext to recruit students to the Teens for Christ Club. [*Id.* at ¶ 22].

## II. STANDARD OF REVIEW

Defendants filed both Motions pursuant to Federal Rule of Civil Procedure 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679

4

(quoting Fed. R. Civ. P. 8(a)(2)).

**III. ANALYSIS**

Accordingly, the Court has considered the parties' positions as detailed below, and for the following reasons, the Court finds Defendants' Motions **[Docs. 46, 47]** well taken, and they will be **GRANTED**. As a threshold matter, the Court has construed Plaintiff's Amended Complaint [Doc. 43] as challenging the constitutionality of the alleged condition precedent to participating in the "school-sponsored basketball program" and not the Teens for Christ Club itself or its practices. Viewing the Amended Complaint in the light most favorable to Plaintiff, Plaintiff has not directly challenged the constitutionality of the Teens for Christ Club. Thus, the Court has limited its analysis for purposes of the instant Motions accordingly and has not directly addressed the constitutionality of the Teens for Christ Club or its practices because Plaintiff has not raised such challenges.[1]

### A. Sufficiency of Plaintiff's Allegations as to Counts Two and Three of the Amended Complaint

Defendant KCBOE challenges Counts Two and Three of the Amended Complaint. Specifically, Count Two alleges that Defendant KCBOE maintained a policy, practice, and custom of permitting its employee, Defendant Comer, to proselytize to students as a condition precedent to allow such students to participate in a school-sponsored basketball program. Count Three

---

[1] The Equal Access Act of 1984 provides that school employees are permitted to be present at a religious meeting held during noninstructional times, but school employees may only attend in a nonparticipatory capacity. 20 U.S.C. §§ 4071(b) and (c)(3). However, the Amended Complaint—even when construed in the light most favorable to Plaintiff—does not allege any constitutional violations or violations of the Equal Access Act of 1984 with respect to the Teens for Christ Club. Instead, Plaintiff's arguments focus on the alleged condition precedent that existed and barred Plaintiff's participation in the "school-sponsored basketball program." Thus, and as mentioned above, the Court has not addressed any issues regarding the constitutional validity of the Teens for Christ Club or its practices.

5

alleges that Defendant KCBOE failed to train its employees, including Defendant Comer, regarding the mandates of the First Amendment.

With respect to Count Two, Defendant KCBOE argues that Plaintiff has "refused to amend the complaint to clarify the facts supporting the conclusory allegations that Plaintiff participated in or wanted to participate in a 'school sponsored basketball program.'" [Doc. 46 at 1]. Defendant KCBOE maintains that the phrase "school sponsored basketball program" is a legal conclusion that must be ignored under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and further, that it is insufficient to plausibly overcome Defendant Comer's defense of qualified immunity.[2] Defendant KCBOE also states that Plaintiff failed to allege facts to support the claim of a custom, practice or policy of a final policymaker, which is a requirement to support a plausible claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

In addition, Defendant KCBOE argues that Plaintiff's allegation that "Principal Claxton was aware of and approved of Comer's actions for not less than eight (8) years prior to the events giving rise to this action" is also insufficient. [*Id.* at ¶ 30]. Defendant KCBOE states as follows:

> Other than conclusory allegations, there are no facts alleged whatsoever from which the Court could find a 'plausible' claim that KCBOE had customs, policies or practices that encouraged Establishment Clause violations. There is no allegation that any final policymaker, such as the School Board or the Superintendent of Schools, was made aware of any unconstitutional policy or practice and approved it.

[Doc. 46 at 2 (citing *Monell*, 436 U.S. at 694)].

---

[2] Defendant KCBOE explains that it has requested for "Plaintiff's counsel to remove or clarify the misleading phrase 'school sponsored basketball program' from the First Amended Complaint because Plaintiff never applied or sought to try out for the school sponsored TMSAA basketball team." [*Id.* at 1, n.1]. Defendant KCBOE argues that, instead, Defendant Comer simply allowed voluntary participants of the Teens for Christ Club to shoot baskets in the gym before school. [*Id.*]. Defendants state that if Plaintiffs do not withdraw the "misleading allegations," then they will seek fees and expenses pursuant to 28 U.S.C. § 1927. [*Id.*].

Defendant KCBOE stresses that Principal Claxton is not a final policymaker because school principals have no final policymaking authority for a school district. Defendant KCBOE argues that, in any case, even if "Principal Claxton was aware of and authorized an unconstitutional policy or practice at one school, KCBOE is not liable under § 1983 for his conduct because *respondeat superior* liability does not apply." [*Id.* (citing *Iqbal*, 129 S. Ct. at 1948–49)]). Thus, Defendant KCBOE states that Count Two of the Amended Complaint must be dismissed for failure to state a claim.

In addition, Defendant KCBOE argues that Plaintiff's Count Three allegations are conclusory and insufficient. Defendant KCBOE specifically points to Plaintiff's contention that "KCBOE failed to train its employees, including Comer, regarding the mandates of the First Amendment." [Doc. 43 at ¶ 36]. Defendant KCBOE states that a *Monell* claim for failure to train may be brought only when a plaintiff shows the following:

> (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused [his] injury . . . . Finally, in the context of a deliberate-indifference *Monell* claim, a plaintiff must also show that the right underlying the failure-to-train claim is clearly established.

[Doc. 46 at 4] (quoting *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, at 511 (6th Cir. 2019)). Defendant KCBOE asserts that Plaintiff has failed to satisfy any of these requirements. Specifically, Defendant KCBOE argues as follows:

> [T]here are no facts alleged describing how Coach Comer and Principal Claxton were trained, or how their training was inadequate to meet the requirements of the Establishment Clause for training teachers and principals. There is no pattern alleged of prior Establishment Clause violations alleged from which KCBOE could have been deliberately indifferent. There is no explanation how KCBOE's inadequate training caused an Establishment Clause

7

> violation in this case. Finally, as argued by Defendant Comer in his motion to dismiss, Defendant Comer did not violate the Establishment Clause and any alleged violation was not clearly established.

[Doc. 46 at 4–5].

Further, Defendant KCBOE argues that Plaintiff's Amended Complaint does not allege sufficient facts to constitute a plausible claim that KCBOE had notice from which it was foreseeable that Defendant Comer would violate the Establishment Clause. Finally, Defendant KCBOE contends that Plaintiff's Amended Complaint fails because Plaintiff has not shown that KCBOE has received more than the normal number of First Amendment complaints for a school district the size of Knox County. Thus, Defendant KCBOE requests that the Court dismiss Plaintiff's Amended Complaint as to Counts Two and Three against it.

Plaintiff responds [Doc. 52] that the Amended Complaint alleges sufficient facts to render it plausible that Defendant KCBOE violated the Establishment Clause of the First Amendment. Plaintiff states that the specific facts alleged are "grounded in KCBOE's own policies making it plausible that KCBOE was aware 'Teens for Christ' was operating at West Valley Middle School, thereby violating the Establishment Clause of the First Amendment." [*Id.* at 13]. Plaintiff points to KCBOE Policy I-221 which requires that every Knox County School have a web page on the school district's website; that all information must accurately reflect the mission, goals, policies, and activities of the district; that the Director of Schools shall develop administrative procedures for the development of web pages including content, quality, and consistency standards and shall designate an individual(s) to be responsible for maintaining and monitoring the website activity; that a school principal shall make such designation for individual school pages; and the Director of Schools and school principal, respectively, are ultimately responsible for the accuracy and appropriateness of information made available on the website and school pages. Plaintiff states

8

that the Court may take judicial notice that the KCBOE's webpage for West Valley Middle School includes reference to the fact Teens for Christ operates a program at the school. Thus, Plaintiff responds that—because Principal Claxton and KCBOE's Director of Schools are responsible for the accuracy of this information—Defendant KCBOE was aware that Teens for Christ was operating a program at West Valley Middle School, and Plaintiff has therefore alleged sufficient facts that Defendant KCBOE maintained customs, policies, or practices that encouraged Establishment Clause violations.

To support these arguments, Plaintiff states that the instant case is similar to *Butler v. Smith Cnty. Bd. of Educ.*, No. 2:19-CV-00091 (M.D. Tenn. Sept. 14, 2020), in which a Consent Order and Decree was entered. Plaintiff says that the plaintiffs in *Butler* alleged that the Smith County Board of Education maintained a "custom, policy, and practice of violating the Establishment Clause by, among other actions, incorporating official prayer into school events . . . [and] proselytizing [to] students[.]" [Doc. 52 at 14 (citing *Butler*, No. 2:19-CV-00091 at Page ID #: 299)]. Plaintiff argues that the Consent Order and Decree entered by the Middle District of Tennessee in *Butler* provides rationale for this Court to deny Defendant KCBOE's Motion to Dismiss.

Defendant KCBOE replies [Doc. 54] that Plaintiff has not addressed the issues raised in the Motion to Dismiss, including vicarious liability and *respondeat superior* providing no basis for liability under § 1983 and Plaintiff's apparent failure to show that a final policymaker participated in the decisions in some manner or implicitly authorized, approved, or knowingly acquiesced in unconstitutional conduct. Defendant KCBOE notes that its policies were not alleged or addressed in the Amended Complaint, but even if they had been, Plaintiff has not shown how "general policies about websites establish *Monell* liability under federal law for the conduct of

Defendant Comer and a school principal." [*Id.* at 10]. Defendant KCBOE asserts that the Amended Complaint does not allege widespread unconstitutional practices, and there are no allegations that the Director of Schools knew about the Teens for Christ Club. Lastly, Defendant KCBOE argues that the Consent Order and Decree in *Butler* adds nothing to the analysis in this case.

The Court finds Defendants' arguments as to the insufficiency of Plaintiff's allegations in Counts Two and Three well taken. The Court agrees that Plaintiff has failed to address the issues raised in Defendant KCBOE's Motion to Dismiss and has ultimately failed to plead sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court concluded in *Monell* "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694. Thus, for a municipality to be liable under § 1983, the constitutional violation must have occurred as part of an official policy or custom. As well, under *Iqbal*, "Government officials may not be held liable for the unconstitutional conduct of their subordinate under a theory of *respondeat superior*." 556 U.S. at 676. And finally, the Court also agrees that for there to be liability under 42 U.S.C. § 1983, Plaintiff must show that a supervisory official or final policymaker "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Here, Plaintiff has failed to address these arguments raised by Defendant KCBOE.

Considering the Amended Complaint in the light most favorable to Plaintiff, the Court finds that there are no factual allegations showing that KCBOE was implicitly authorizing,

approving, or knowingly acquiescing in any unconstitutional conduct at the school stemming from a condition precedent barring certain students from participating in a school-sponsored basketball program. Instead, Plaintiff alleges in Count Two that there is a possibility that Principal Claxton and possibly other school officials knew of the *existence* of the "Teen for Christ" Club. The parties dispute Principal Claxton's status as a final policymaker for purposes of § 1983 liability.[3] In any case, the Court finds that this is a tangential issue and is not dispositive. The key issue is whether a final policymaker, be it Principal Claxton or someone else, knew of any unconstitutional customs, policies, or practices that encouraged Establishment Clause violations. As previously stated, Plaintiff's allegations only suggest that a policymaker was aware of the existence of the Teens for Christ Club, but Plaintiff's allegations do not go so far as to make it plausible that a final policymaker was put on notice of ongoing unconstitutional conduct like the alleged condition precedent. Accordingly, for the reasons explained above, the Court finds that Plaintiff's Count Two claim should be dismissed for failure to state a claim upon which relief may be granted.

As mentioned above, Count Three alleges that Defendant KCBOE failed to effectively train employees regarding the mandates of the First Amendment and was deliberately indifferent. The Court finds that Count Three of the Amended Complaint fails to allege sufficient facts to state a plausible claim for relief. The Court finds the cases cited in Defendant KCBOE's Motion are relevant and instructive on this issue. For instance, in *Rayfield v. City of Grand Rapids*, the Sixth

---

[3] The Court does not attempt to determine whether Principal Claxton would be a policymaker for purposes of § 1983 liability in this case because that is not the key issue. However, the Court notes, "[w]hether an official has final policymaking authority is a question of state law for the court to decide. The Sixth Circuit has found that an official is a policymaker if the official's actions are '(1) final, (2) not reviewable, and (3) unconstrained by the existing policies and practices of his supervisor[s],' or where the official has been delegated 'unfettered discretion.' In Tennessee, a principal is required to act 'under the supervision of the director of schools and in accordance with the written policies of the local board of education.'" *See Doe v. Farmer*, No. 3:06-0202, 2009 WL 3768906, at *12 (M.D. Tenn. Nov. 9, 2009) (internal citations omitted).

Circuit explained, "[a] *Monell* claim for failure to train may be brought '[o]nly where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants,' thereby showing the necessary 'policy or custom' to establish § 1983 liability." 768 F. App'x 495, 510–11 (6th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Further, *Rayfield* provides a list of requirements that plaintiffs who bring claims based on failure to train and deliberate indifference must show to state a successful § 1983 cause of action:

> (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused [his] injury . . . . Finally, in the context of a deliberate-indifference *Monell* claim, a plaintiff must also show that the right underlying the failure-to-train claim is clearly established.

*Id.* at 511.

In the present matter, the Court finds that Plaintiff has failed to plead sufficient facts to meet any of these requirements. Plaintiff has not alleged any facts regarding KCBOE's training programs, so it is impossible to determine whether they would be inadequate to the tasks. In addition, Plaintiff has not pleaded any facts to indicate a pattern by Defendant KCBOE demonstrating deliberate indifference as to constitutional violations occurring at West Valley Middle School or any other Knox County schools. Lastly, Plaintiff fails to show the third requirement because, again, no facts were pleaded regarding KCBOE's training policies or practices.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion)). *Connick* also provides that "'deliberate indifference' is a strength standard of fault, requiring proof that a municipal actor disregarded a

12

known or obvious consequence of his action." *Id.* (quoting *Bd of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). As discussed earlier, Plaintiff has—at most—only pleaded that Principal Claxton and possible other KCBOE officials knew that the Teens for Christ Club existed. Plaintiff has not pleaded any facts to suggest that a final policymaker was aware of any ongoing constitutional violations, especially any that may have resulted from inadequate training. *See Nouri v. County of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) ("[Plaintiff's] complaint is fatally deficient on at least the first and second elements; it simply does not set forth any facts that suggest the Sheriff or County had notice of recurring violations, or even the mistreatment of [Plaintiff] himself."). Further, the Court agrees with Defendants and finds that the Consent Order and Decree from *Butler* is not helpful as the parties simply entered into a settlement agreement.

Given the above, the Court finds that Count Three of the Amended Complaint also fails to plead sufficient factual allegations to state a plausible claim for relief. Thus, the Court will dismiss Count Three for failure to state a claim upon which relief may be granted.

### B. Sufficiency of Plaintiff's Count One Allegations and Defendant Comer's Qualified Immunity Defense

Defendant Comer challenges the sufficiency of Count One of the Amended Complaint, which alleges that he violated the Establishment Clause by proselytizing to students as a condition precedent to participation in school-sponsored activities. In addition, Defendant Comer raises a qualified immunity defense. Defendant Comer argues that Plaintiff has failed to meet the burden of pleading sufficient facts and circumstances to plausibly allege the violation of a clearly established right. Specifically, Defendant Comer argues as follows:

> "[I]t is clearly established that a program mandating that all students read the Bible during class in a public school would violate the Establishment Clause. *Sc. Dist. Of Abington Twp. v. Schempp*, 374 U.S. 203, 205 (1963). In *Lamb's Chapel v. Center Moriches Union*

13

> *Free Sch. Dist.*, 508 U.S. 384, 395 (1993), however, the Court rejected an Establishment Clause challenge to a policy allowing use of school facilities, and held that because religious and secular organizations would have equal access 'there would have been no realistic danger that the community would think that the [School] District was endorsing religion or any particular creed.'

[Doc. 47 at 4–5]. Defendant Comer states that it is clear from caselaw that "if a public school has a policy granting access to school facilities during non-school hours for non-religious clubs and groups, it must make the same facilities available for religious clubs and groups; and it cannot censure the speech of participants in the religious clubs based upon the content." [*Id.* at 6–7 (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 102 (2001); *Agema v. City of Allegan*, 826 F.3d 326, 336 (6th Cir. 2016))].

Defendant Comer maintains that Plaintiff's Amended Complaint has failed to plead several facts that are necessary for this Court to properly analyze Plaintiff's Establishment Clause claim and Defendant Comer's qualified immunity defense. Defendant Comer explains that "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." [*Id.* (quoting *Camp v. Knox County*, No. 3:14-CV-257-PLR-HBG, 2015 U.S. Dist. LEXIS 12715, *14–15 (E.D. Tenn. Feb. 3, 2015))]. Further, Defendant Comer states that "[t]he First Amended Complaint fails to overcome Defendant Comer's qualified immunity defense because it fails to plausibly allege sufficient facts and circumstances for the Court to determine that the particularized right at issue was 'clearly established.'" [*Id.* at 7].

Specifically, and similar to Defendant KCBOE's argument, Defendant Comer argues that Plaintiff's allegation that Plaintiff participated in or attempted to participate in a "school-sponsored basketball program" is conclusory and insufficient. Next, Defendant Comer argues that the Amended Complaint fails to allege whether West Valley Middle School had a policy granting equal access to school facilities during non-school hours for religious and non-religious clubs and

14

groups. Defendant Comer argues, "It has been clearly established that religious clubs can use recreational facilities in a public school gymnasium during non-school hours." [*Id.* (citing *Good New Club*, 533 U.S. at 102)]. Defendant points out that Plaintiff has pleaded no facts indicating that other non-religious clubs had previously asked for and been denied use of the school gymnasium to shoot baskets before school, nor does the Amended Complaint allege that Plaintiff joined, sought to join, or formed a non-religious or non-Christian club that was denied similar access to the school's gym before school. Thus, Defendant Comer explains that this Court must assume that he was following a West Valley Middle School policy permitting equal access to *all* clubs and groups—religious or not—to shoot baskets in the gymnasium during non-school hours. [*Id.* at 7–8].

Defendant Comer also states that Plaintiff has "essentially [admitted] that the 'basketball program' was a component of the 'Teens for Christ' club" because "[o]nly after [Plaintiff] attempted to participate in the school-sponsored basketball program did [Plaintiff] learn that listening to Comer's sermons was a condition precedent to participating in said school-sponsored basketball program." [*Id.* at 8 (citing [Doc. 43 at ¶ 18])]. Thus, Defendant Comer argues that the Court must assume that he was reading from the Bible and proselytizing to voluntary participants of the Teens for Christ Club and simply allowed those participants to shoot basketballs in the gymnasium before school. Lastly, Defendant Comer asserts that while he was allegedly reading from the Bible to the voluntary participants, he was lawfully exercising his own First Amendment rights and that he could not be censured by Defendant KCBOE based upon the content of his speech without violating his rights. Therefore, Defendant Comer states that this Court must also assume that he was lawfully exercising his own First Amendment Rights because Plaintiff has failed to allege the essential facts to evaluate Defendant Comer's qualified immunity defense.

15

Plaintiff responds [Doc. 52] that Defendant Comer's Motion should be denied because he is not, in fact, immune from suit in this action for his alleged violations of the Establishment Clause. Plaintiff argues that Defendant Comer incorrectly states that the basketball program at issue was not "school sponsored," as evidenced by KCBOE's own policies. Plaintiff points to KCBOE Policy I-170, which provides as follows:

1. Only clubs or student activities approved by the principal will be considered as **school sponsored** and allowed to operate using the name of the Board of Education or the School's name. Non-school sponsored clubs or student activities shall not conduct their activities on school property without prior permission from the principal.

2. All **school sponsored** clubs/student activities must have a **faculty sponsor** in order to be approved as **school sponsored**.

3. All student activities/clubs, to include their scheduled meeting times, whether before, during, or after school hours, must have the approval of the principal.

4. Student activities/clubs occurring before or after regularly scheduled school hours, must be made known to the principal.

Given that policy, Plaintiff proffers that the basketball program is "by definition 'school sponsored.'" [Doc. 52 at 7].

Defendants reply [Doc. 54] that they did not deny that the Teens for Christ Club was approved by Principal Claxton and had a faculty sponsor, nor did they contend that the club was not "school sponsored." Defendants explain that they took issue with the phrase "school sponsored basketball program" because it is a legal conclusion that must be ignored under *Iqbal*. Defendants "continue to object as conclusory to any implication that Defendant Comer required participation in the Teens for Christ Club as a condition to join the school sponsored TMSAA basketball team, or any other school sponsored activities." [*Id.* at 3]. Defendant Comer states that, "[t]here is

16

nothing wrong with an extracurricular religious club such as Teens for Christ using school facilities outside of school operating hours." [*Id.*]. Further, Defendant Comer argues that Plaintiff has provided no authority clearly establishing that it was unconstitutional for Defendant Comer to allow member of the Teens for Christ Club to shoot baskets in the gym prior to the start of school.

Defendant Comer also states that after he invokes qualified immunity, it is Plaintiff's burden to show that it does not apply. Defendant Comer argues that Plaintiff has not overcome his qualified immunity defense. Defendant Comer further argues in his reply that "[i]t is not clearly established that [he] cannot read from the Bible during meetings of the Teens for Christ Club." [*Id.*]. Defendant Comer maintains that none of the cases cited in Plaintiff's response "(a) prohibits [*sic*] a teacher from reading from the Bible during voluntary meetings of a Christian club before (or after) regular school hours; or (b) prohibits public school officials from allowing school clubs (including a Christian Club) equal access to the basketball facilities in the gym before school[,]" nor is it "clearly established that the minor Plaintiff had a First Amendment right to participate in the before-school basketball shooting component of the Teens for Christ Club without joining the Club and participating in its religious component." [*Id.* at 5].

Defendant Comer asserts that the cases Plaintiff cites to are not helpful to show it was clearly established that his actions were disallowed. Thus, Defendant Comer argues that Plaintiff's allegations are insufficient and conclusory, and Plaintiff has failed to show that it is clearly established that he violated the Establishment clause by reading from the Bible during voluntary meetings of a Christian Club outside regular school hours or by permitting school clubs like the Teens for Christ Club to use the gym to shoot basketballs before school. Lastly, Defendants argue that the Consent Order and Decree in *Butler* is not controlling, does nothing to show any clearly

17

established violation of Plaintiff's constitutional rights, and is irrelevant because the consent judgment was entered after the conduct at issue in this case.

As an initial matter, the Court notes that Plaintiff's response cites to case law addressing constitutional concerns with a teacher actively participating in a student-run religious club; however, the Amended Complaint focuses on the "school-sponsored basketball program" and has not given the Court cause to specifically address the constitutionality of the Teens for Christ Club.[4] Thus, focusing solely on the alleged issue of whether Defendant Comer required participation in the Teens for Christ Club as a condition precedent to participation in a school-sponsored basketball program, the Court agrees with Defendant Comer and finds that the allegations in the Amended Complaint as to Count One are insufficient. As well, the Court agrees that the issue is not whether the Teens for Christ Club was itself school-sponsored—as Defendants agree that it is. *See* [Doc. 54 at 2]. Instead, the dominating allegation in the Amended Complaint, is whether Defendant Comer required participation in the Teens for Christ Club as a condition precedent to participation in a school-sponsored basketball program, like the TMSAA basketball team. The Court finds that Plaintiff has alleged no facts indicating as such, and Plaintiff has not shown that other clubs—religious or non-religious—were denied use of the school's gym to shoot basketballs outside of regular school hours or for some other purpose.

---

[4] Plaintiff maintains that it is clearly established that public-school officials, such as Defendant Comer, may not proselytize to students. The Court agrees. The problem with the Amended Complaint, however, is that Plaintiff asserts that the alleged condition precedent to participating in the school-sponsored basketball program is a clear violation of Plaintiff's right to not be proselytized to by a school official, even if the students being preached to are attending voluntarily. Plaintiff has alluded to constitutional challenges against the Teens for Christ Club and its practices in the Response; however, the Amended Complaint does not challenge the Teens for Christ Club. Instead, the Amended Complaint focuses on the "school-sponsored basketball program," and Plaintiff has not sought to further amend the complaint.

18

Case 3:20-cv-00096-DCP   Document 64   Filed 11/05/21   Page 18 of 20   PageID #: 281

Further, Plaintiff cites to no caselaw clearly establishing that it is patently unconstitutional for a teacher like Defendant Comer to allow a religious school club to use the school gymnasium to shoot basketballs outside of regular school hours. Plaintiff does cite to KCBOE Policy I-170, but this provides no relevant instruction to the Court other than establishing the requirements to be "school-sponsored" and that Principal Claxton and other school officials were likely aware the gym was being used outside of regular school hours—something that is not disputed by Defendants nor particularly helpful for resolving this issue.[5] The Court has not been directed to any caselaw suggesting that a religious school club using school facilities outside of school hours would be unconstitutional—especially considering no facts have been alleged that other clubs have been denied the opportunity to use the gymnasium in a similar manner. In fact, Defendant Comer points to relevant case law to show that use of a school's facilities outside of school hours by a religious club is *not* patently unconstitutional. *See, e.g., Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 (1993) (rejecting an Establishment Clause challenge to a policy allowing use of school facilities and holding that because religious and secular organizations would have equal access "there would have been no realistic danger that the community would think that the [School] District was endorsing religion or any particular creed."); *Widmar v. Vincent*, 454 U.S. 263, 272–73, n. 13 (1981) (rejecting an Establishment Clause claim where there was a forum at a university that was "already available to other groups.")

---

[5] The Court notes that the Amended Complaint makes no reference to KCBOE Policy I-170. No party has requested for the Court to convert Defendants' motions to dismiss as motions for summary judgment. In any case, the Court finds it is unnecessary to do so because the policy referred to by Plaintiff in the supplement to the response [Doc. 52] is not particularly relevant nor helpful to this issue. *See Graham v. City of Hopkinsville, Ky.*, No. 5:12-CV-23, 2012 WL 4483866, at *2 (W.D. Ky. Sept. 28, 2012) ("A district court has broad discretion when deciding whether to convert a motion to dismiss to one for summary judgment.") (citing *Bruce v. Correctional Medical Services, Inc.*, 389 F. App'x 462, 465 (6th Cir. 2010)).

The defense of qualified immunity shields government officials performing discretionary functions from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether qualified immunity is applicable, the court must consider (1) whether a constitutional right has been violated, and (2) whether that right was clearly established. *Bazzi v. City of Dearborn*, 658 F.3d 598, 606-07 (6th Cir. 2011). Courts have discretion in choosing which of these necessary elements it analyzes first. *Person v. Callahan*, 555 U.S. 223, 237 (2009). A plaintiff bears the ultimate burden of proof, and if he/she fails to carry such burden as to either element, then the official is immune for suit. *Miller v. Detroit Pub. Sch.*, 189 F. Supp. 3d 671, 682 (E.D. Mich. 2016) (other citations omitted). The Court finds that Plaintiff has not met this burden.

Given the above, the Court finds that Count One of the Amended Complaint must also be dismissed as Plaintiff has failed to state a claim upon which relief can be granted and has not met the burden to show that Defendant Comer is not entitled to a qualified immunity defense.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss for Failure to State a Claim **[Doc. 46]** and Motion to Dismiss for Qualified Immunity **[Doc. 47]**. A separate judgment will enter.

SO ORDERED.

ENTER:

*/s/ Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

20